## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **DONNA SUE BURDEN,** | |
| **Plaintiff,** | |
| **v.** | **1:12-cv-04392-WSD** |
| **RELIASTAR LIFE INSURANCE COMPANY,** | |
| **Defendant.** | |

## OPINION AND ORDER

This matter is before the Court on Defendant Reliastar Life Insurance Company's ("Defendant") Motion for a Trial on the Papers, or Alternatively, for Summary Judgment.

## I.   BACKGROUND

### A.   Facts

Donna Sue Burden ("Plaintiff") is the beneficiary of a group long-term disability insurance policy ("policy") issued by the Defendant. Def.'s Statement of Material Facts ("DSMF") ¶ 1.[1] The Defendant issued the policy to Gwinnett

---

[1] Local Rule 56.1(B)(2)(a) requires the Plaintiff to include a written response to the DSMF. See N. D. Ga. R. 56.1(B)(2)(a). Plaintiff did not file a written response to the DSMF or otherwise file a statement of additional facts contending that there are

Hospital System ("Gwinnett"), which funded disability benefits for its eligible employees.  Id.  The policy provided benefits to a disabled employee under two separate circumstances, and defined "disabled" in the following ways:

> (1) During the benefit waiting period and the following 24 months, your inability to perform the essential duties of your regular occupation and as a result you are unable to earn more than 80% of your basic monthly earnings.
>
> (2) After 24 months of benefits, your inability to perform the essential duties of any gainful occupation, and as a result you are unable to earn more than 60% of your indexed basic monthly earnings.

Id. at ¶ 3.

The policy defined "essential duties" as "duties which are normally required for the performance of an occupation as it is normally performed in the national economy and which cannot be reasonably omitted or verified."  Id. at ¶ 4.  The policy also defined "gainful occupation" as "any occupation that your training,

---

material and disputed issues of fact for trial.  Pursuant to Local Rule 56.1(B)(2)(a)(2), the Court deems each of the facts in the DSMF as admitted because Plaintiff failed to file a response to the DSMF; failed to refute any facts set forth in the DSMF; and failed to state any valid objections to the facts set forth in the DSMF.  The Court will review only the Defendant's citations to the record to determine whether there is no genuine issue of material fact.  See BMU v. Cumulus Media, Inc., 366 F. App'x 47, 49 (11th Cir. 2010) (finding no error in the district court's decision to deem the movant's facts as admitted when non-movant failed to file a response to the movant's statement of undisputed facts); Mann v. Taser Intern., Inc., 588 F.3d 1291, 1302 (11th Cir. 2009) (affirming the district court's decision to deem the movant's statement of undisputed facts as admitted where non-movant failed to comply with Rule 56.1(B)(2)(a)).

education and experience would allow you to perform." Id. at ¶ 5.  It is undisputed that the Defendant has the discretion to determine whether an employee is entitled to disability benefits under the plain terms of the policy.  Id. at ¶ 7; [Pl.'s Initial Disclosures at 5.]

Between September 11, 2000 and January 27, 2009, Plaintiff worked as a registered nurse at Gwinnett where her job responsibilities required "the ability to carry 100 to 150 pounds with assistance, frequently exert up to 20 pounds of force, and occasionally exert up to 40 pounds of force." Id. at ¶ 9.  On January 27, 2009, Plaintiff's employment at Gwinnett ended following injuries to her left and right shoulders.  Id. at ¶ 10.  On January 28, 2009, Plaintiff had surgery on her right shoulder for "rotator cuff repair." Id. at ¶ 16.  After her surgery, Plaintiff submitted to Defendant a claim for long-term disability benefits, and attached a statement from her attending physician, Dr. David Stokes, which stated that Plaintiff could lift only a maximum of 10 pounds, and that Plaintiff was unable to "climb, stoop, kneel, crouch, crawl or reach." Id. at ¶¶ 12-13.  On May 19, 2009, Defendant approved Plaintiff's claim for long-term disability benefits under the "inability to perform the essential duties of your regular occupation" provision of the policy.  Id. at ¶ 14.  Defendant paid long-term disability benefits to the Plaintiff from April 28, 2009 to August 1, 2011.  Id. at ¶¶ 14; 31.

On August 6, 2009, a Functional Capabilities Examination ("FCE") of the Plaintiff was performed at the direction of Dr. Stokes.  Id. at ¶ ¶ 17-18.  The FCE revealed that Plaintiff was capable of working in a sedentary job "with a modified floor to waist lift of 10 pounds occasionally and 5 pounds frequently."  Id. at ¶ 19. Between August, 2009 and May, 2010, Dr. Stokes evaluated the Plaintiff on several occasions, and agreed with the FCE's conclusion that Plaintiff could lift up to 10 pounds and perform sedentary work.  Id. at ¶ 21.

On February 11, 2011, Defendant informed the Plaintiff that she had to be unable to "perform the essential duties of any gainful occupation" for her long-term disability benefits to continue beyond the benefits waiting period and the following twenty-four months.  Id. at ¶ 22.  The Defendant requested the Plaintiff to provide proof that she would remain disabled into the future.  Id. at ¶ 23.  On May 6, 2011, Defendant received a statement from Dr. Stokes which said that "I do not ever see her being able to return to gainful employment as a nurse in her current condition and I do not believe [that] she will improve with time."  Id. at ¶ 24.  On June 20, 2011, the Defendant asked Dr. Stokes to clarify whether he believed that the Plaintiff could not perform the essential duties of her prior job at Gwinnett, or whether he believed that the Plaintiff could not perform the essential duties of a full time job in a sedentary occupation.  Id. at ¶ ¶ 24-25.

4

On June 28, 2011, Dr. Stokes informed the Defendant that he continued to agree with the FCE's finding that Plaintiff could return to work in a sedentary occupation.  Id.  In July 2011, the Defendant hired a third party to conduct a Labor Market Survey ("LMS") in the greater Logandale, Georgia area where the Plaintiff currently resides.  Id. at ¶ 27.  The LMS showed that Plaintiff was qualified for, at least, five prospective nursing jobs in the greater Logandale area, which paid over $22.50 an hour, exceeding 60% of the Plaintiff's indexed basic monthly earnings at Gwinnett.  Id. at ¶ ¶ 24-25.  On August 1, 2011, the Defendant terminated the Plaintiff's long-term disability benefits, and concluded that she did not qualify for the benefits because she was capable of full time sedentary work in the national economy.  Id. at ¶ ¶ 30-31.

In November 2011, the Plaintiff appealed the Defendant's decision to deny long-term disability benefits to the Defendant's ERISA Appeals Committee ("Committee").  Id. at ¶ 32.  The Plaintiff argued before the Committee that the FCE was outdated because her condition had become "degenerative," and claimed that she did not qualify for any of the positions listed in the LMS.[2]  Id. at ¶ ¶ 32-33. Plaintiff also provided the Committee with proof of her worker's compensation

---

[2] Plaintiff did not provide the Committee with any documents or other information to substantiate these claims.  Id.

and Social Security Disability Insurance ("SSDI") awards.  Id. at ¶ 33.[3]

On January 19, 2012, at the direction of the Defendant, Dr. Quisling, a board certified orthopedic surgeon, performed an Independent Medical Examination ("IME") of the Plaintiff, which consisted of an in-person examination, and a review of the Plaintiff's medical records.  Id. at ¶ 36.  On January 24, 2012, Dr. Quisling concluded in his IME report that "I do agree with the FCE from 2009 and feel there is no medical reason why she couldn't perform a sedentary job."  Id. Dr. Quisling's conclusion was consistent with Dr. Stokes's evaluation of Plaintiff on January 17, 2012.  On that day, Dr. Stokes abided by his conclusions in 2009 and 2011, that Plaintiff was capable of performing sedentary work.  Id. at ¶ 37.  On February 9, 2012, the Committee upheld the decision to deny long-term disability benefits to the Plaintiff, and agreed that she did not meet the definition of "disabled" under the policy.

---

[3] On September 12, 2011, an Administrative Law Judge found that the Plaintiff was entitled to SSDI benefits because her "impairment or combination of impairments [was] so severe that [she] [could] not perform any work existing in significant numbers in the national economy."  [R. at 2430-31].

B.     Procedural History

On November 12, 2012, the Plaintiff filed her Complaint against the

Defendant in the Superior Court of Fulton County alleging breach of contract and

bad faith denial of insurance benefits under O.C.G.A. § 33-4-6.  The Complaint

sought damages in the amount of benefits Plaintiff claims are owed, plus interest

and attorneys' fees.  On December 20, 2012, the Defendant filed its notice of

removal on the grounds that the allegations in the Compliant are governed by

ERISA.  The parties agree that the long-term disability insurance policy is

governed by ERISA, 29 U.S.C. § 1132, and that this Court has jurisdiction over

this matter.  [Pl.'s Initial Disclosures at 4.] [4]

---

[4] Removal to this Court is proper because Plaintiff's state law claim seeking
benefits under the long-term disability insurance policy is completely preempted
by ERISA.  Under the "complete preemption" doctrine, Congress can completely
preempt an area of state law in such a way that the state law claim is necessarily
federal in nature and thus provides a basis for federal subject matter jurisdiction.
Engelhardt v. Paul Revere Life Ins. Co., 139 F.3d 1346, 1355 (11th Cir. 1998).
Federal courts are required to recast a completely preempted state law claim as one
arising under federal law for purposes of removal jurisdiction.  Id.  Under Eleventh
Circuit precedent, state law claims are completely preempted by ERISA when: (1)
there is a relevant ERISA plan; (2) the plaintiff is a beneficiary of the ERISA plan;
(3) the defendant is an ERISA entity; and (4) the plaintiff seeks compensatory
relief for benefits due under the plan.  Butero v. Royal Maccabees Life Ins. Co.,
174 F.3d 1207, 1212-1213 (11th Cir. 1999).  The Court finds that all four elements
are satisfied here.  There is no dispute that Plaintiff is the beneficiary of an
employee benefits plan, and that Plaintiff challenges the Defendant's refusal to pay
benefits under the plain terms of a policy governed by ERISA.  There is also no
dispute that Defendant is an ERISA entity because it has the exclusive authority to

On August 15, 2013, the Defendant moved for a trial on the papers or, alternatively, for summary judgment on the grounds that the Plaintiff is not entitled to long-term benefits under the plain terms of the policy.  Defendant also seeks a judgment in its favor on Plaintiff's state law claims on the grounds that her state law claims are preempted by ERISA.

## II.    DISCUSSION

### A.    Legal Standard on Summary Judgment

The Court will address only the Defendant's Motion for Summary Judgment because the Plaintiff has not consented to a trial on the papers.  A trial on the papers is not available absent Plaintiff's consent.  See Acuff-Rose Music Inc. v. Jostens Inc., 155 F.3d 140, 142 (2nd Cir. 1998); Market Street Ass'n Ltd. P'ship v. Frey, 941 F.2d 588 (7th Cir. 1991).

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Parties "asserting that a fact cannot be or is genuinely disputed must support that assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored

---

determine eligibility of benefits under the insurance policy and review denied claims.

information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1).

The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact.  Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1246 (11th Cir. 1999).  Once the moving party has met this burden, the non-movant must demonstrate that summary judgment is inappropriate by designating specific facts showing a genuine issue for trial.  Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1282 (11th Cir. 1999).  Non-moving parties "need not present evidence in a form necessary for admission at trial; however, [they] may not merely rest on [their] pleadings."  Id.

The Court must view all evidence in the light most favorable to the party opposing the motion and must draw all inferences in favor of the non-movant, but only "to the extent supportable by the record."  Garczynski v. Bradshaw, 573 F.3d 1158, 1165 (11th Cir. 2009) (quoting Scott v. Harris, 550 U.S. 372, 381 n.8 (2007)).  "[C]redibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury . . . ."  Graham, 193 F.3d at 1282.  "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial."  Herzog, 193 F.3d at 1246.  But, "[w]here

9

the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment for the moving party is proper.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

    B.    ERISA Standard

ERISA allows a person denied benefits under an employee benefit plan to challenge the denial in federal court.  29 U.S.C. § 1132(a)(1)(B).  ERISA, however, does not provide a standard for district courts to apply when reviewing an ERISA plan administrator's decision to deny benefits.  Doyle v. Liberty Life Assurance Co., 542 F.3d 1352, 1355 (11th Cir. 2008) (citing Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 112 (1989)). The Eleventh Circuit has provided a six-step analysis to guide district courts in reviewing an administrator's benefits decision:

> (1) Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.
>
> (2) If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.
>
> (3) If the administrator's decision is "*de novo* wrong" and he *was* vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

> (4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.
>
> (5) If there is no conflict, then end the inquiry and affirm the decision.
>
> (6) If there is a conflict of interest, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary or capricious.

Blankenship v. Metropolitan Life Ins. Co., 644 F.3d 1350, 1355 (11th Cir. 2011).

Under the first step, a decision is "wrong" if "the court disagrees with the administrator's decision."  Williams v. BellSouth Telecomm., Inc., 373 F.3d 1132, 1138 n. 8 (11th Cir. 2004) (overruled on other grounds).  The Court applies the terms of the plan to determine whether the administrator was "wrong" in denying benefits to the claimant.  Brannon v. BellSouth Telecomm., Inc., 318 Fed. App'x 767, 769 (11th Cir. 2009).

When conducting a review of an ERISA benefits denial under the arbitrary and capricious standard, the function of the court is to determine whether there was a reasonable basis for the decision, based upon the facts as known to the administrator at the time the decision was made.  Jett v. Blue Cross & Blue Shield of Ala., 890 F.2d 1137, 1139 (11th Cir. 1989).   Even if the benefit determination is *de novo* wrong, the role of the court is limited to an inquiry into whether there were "reasonable" grounds to support it.  Williams, 373 F.3d at 1138.  The Court

thus limits its review to whether the plan administrator's benefits determination "was made rationally and in good faith—not whether it was right." Griffis v. Delta Family-Care Disability, 723 F.2d 822, 825 (11th Cir. 1984).  "[T]he reviewing court will affirm merely if the administrator's decision is reasonable given the available evidence, even though the reviewing court might not have made the same decision if it had been the original decision-maker." Callough v. E.I. du Pont de Nemours & Co., 941 F. Supp. 1223, 1228 n.3 (N.D. Ga. 1996).

A "reviewing court must take into account an administrative conflict when determining whether an administrator's decision was arbitrary and capricious, [but] the burden remains on the plaintiff to show the decision was arbitrary; it is not the defendant's burden to prove its decision was not tainted by self-interest." Doyle, 542 F.3d at 1360.  The conflict of interest factor "should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decisionmaking irrespective of who the inaccuracy benefits." Metropolitan Life Ins. Co. v. Glenn, 554 U.S. 105, 117 (2008).

C.     Burden of proof

A plaintiff seeking to recover benefits under a policy governed by ERISA bears the burden of proving his entitlement to contractual benefits.  See Horton v. Reliance Standard Life Ins. Co., 141 F.3d 1038, 1040 (11th Cir. 1998).  See also Brucks v. Coca-Cola Co., 391 F. Supp. 2d 1193, 1205 n. 12 (N.D. Ga. 2005) (noting that ERISA "places the burden on the claimant to demonstrate she is entitled to benefits under the plan, not on the administrator to demonstrate that the claimant is not disabled"); Papczynski v. Connecticut Gen. Life Ins. Co., 730 F. Supp. 410, 413 (M.D. Fla. 1990) (concluding plaintiff must prove by a preponderance of the evidence that he is entitled to disability benefits within the terms of the policy) (citing Connecticut Gen. Life Ins. Co. v. Breslin, 332 F.2d 928, 934 (5th Cir. 1964)).  "But, if the insurer claims that a specific policy exclusion applies to deny the insured benefits, the insurer generally must prove the exclusion prevents coverage."  Horton, 141 F.3d at 1040.

D.     Analysis

1.     *Review of Defendant's Decision to Deny Benefits*

The Court first conducts a *de novo* review to determine whether the Defendant's decision was wrong.  Defendant argues that its decision to deny long-term disability benefits to the Plaintiff was correct based on the terms of the policy

13

and the administrative record.  The Court agrees.  After receiving benefits for twenty-four months, the Plaintiff had to be unable to perform the essential duties of any occupation that her training, education and experience would allow her to perform in order to qualify for disability benefits that exceeded 60% of her indexed basic monthly earnings.

An FCE of the Plaintiff performed after her surgery concluded that she was capable of working in a sedentary capacity "with a modified floor to waist lift of 10 pounds occasionally and 5 pounds frequently."  DSMF at ¶ 32.  The Plaintiff's own treating physician evaluated the Plaintiff on several occasions between 2009 and 2012, and repeatedly agreed with the FCE's finding that she could return to work in a sedentary occupation.  On January 19, 2012, an IME of the Plaintiff, which consisted of an in-person examination and a detailed review of the Plaintiff's medical history, found that Plaintiff was able to perform a sedentary job.  A LMS conducted by an independent third party showed that Plaintiff was qualified for, at least, five prospective nursing jobs in the greater Logandale area.  These jobs paid over $22.50 an hour, which exceeded 60% of the Plaintiff's indexed basic monthly earnings at Gwinnett.  Based on these facts, the Court concludes that it would not have reached a result different from the decision

reached by Defendant to deny disability benefits, and the decision to deny disability benefits was not wrong.

The Plaintiff now argues that she suffers from a "degenerative" disease, but she has not provided to the Defendant or to the Court any medical or other evidence to support this asserted claim. The Plaintiff also broadly attacks the LMS in her Reply to the Defendant's Motion for Summary Judgment. The Plaintiff's criticisms of the LMS range from the irrelevant to the nearly incomprehensible.

The Plaintiff complains that she was not qualified for some of the jobs identified in the LMS, but she does not offer any evidence to contradict that she was qualified for the vast majority of jobs identified in the LMS. The Plaintiff asserts a host of conclusory statements regarding the LMS in an effort to discredit it. For instance, the Plaintiff claims that she cannot drive a car,—even though the record includes an admission that the Plaintiff can and does drive—cannot hold a telephone for extended periods of time, and cannot use Microsoft software, rendering her unqualified for some jobs identified in the LMS. [R. at 2639]. The Court will not consider these conclusory statements in deciding this Motion

because they are set out only in the Plaintiff's brief and are unsupported by any evidence.  See N.D. Ga. R. 56.1(B)(1).[5]

The Court would not reach a different result even if it considered the full range of Plaintiff's LMS complaints.  A neutral third party conducted the LMS.  It considered the Plaintiff's experience as well as her physical limitations based on the FCE's finding that Plaintiff could not lift greater than 10 pounds.  The neutral third party called several employers and spent a significant amount of time conducting the survey.  The conclusions of the LMS, which was conducted in July 2011, are consistent with the opinion of the Plaintiff's treating physician and the IME in January, 2012, that Plaintiff is fully capable of performing a sedentary job.

Based on this compelling record, the Court concludes that the Defendant's decision to credit the LMS was not wrong.  See Niedens v. Cont'l Cas. Co., 258 Fed. App'x 216, 220 (10th Cir. 2007) (affirming the administrator's decision to rely on a LMS because it was conducted by a third party with expertise in the

_____

[5] Local Rule 56.1(B)(1) states that, in deciding a motion for summary judgment, the Court will not consider any fact: (a) not supported by a citation to evidence (including page or paragraph number); (b) supported by a citation to a pleading rather than to evidence; (c) stated as an issue or legal conclusion; or (d) set out only in the brief and not in the movant's statement of undisputed facts.  Any facts submitted by a non-movant are required to comply with Rule 56.1(B)(1).  See N.D. Ga. R. 56.1(B)(2)(b).

market, and the third party called several employers and spent a significant amount of time conducting the survey); Gillen v. Life Ins. Co. of North America, 199 F. Supp. 2d 900, 906 (W.D. Wis. 2001) (finding that insurer could deny benefits based on the results of a LMS because the LMS showed that plaintiff was qualified for a number of jobs, and the LMS was not required to show the likelihood of plaintiff's employment).

The Plaintiff argues that her worker's compensation and SSDI awards show that the Defendant's decision to deny long-term disability insurance benefits was in error.  The Defendant responds that the ERISA Appeals Committee fully considered the Plaintiff's worker's compensation and SSDI awards in determining if Plaintiff was disabled under the terms of the policy.  The Defendant also argues that it is not bound by the standards that govern disability determinations under the state workers' compensation laws or the Social Security Act.

The Court agrees that Defendant is not bound by a decision that designates the Plaintiff as disabled under the state workers' compensation laws or the Social Security Act.  See Black & Decker Disability Plan v. Nord, 538 U.S. 822, 830 (2003).  The government's approval of disability benefits "is not dispositive on the issue of whether a claimant satisfies the requirement for disability under an ERISA-covered plan."  Whatley v. CNA Ins. Co., 189 F.3d 1310, 1314 n. 8 (11th

Cir.1999).  The Eleventh Circuit has recognized that "'[a] district court may consider the Social Security Administration's ["SSA"] determination of disability in reviewing a plan administrator's determination of benefits.'"  Id. (quoting Kirwan v. Marriott Corp., 10 F.3d 784, 790 n. 32 (11th Cir. 1994).  The record here, however, does not contain any information regarding why the Administrative Law Judge found that the Plaintiff's "impairment [was] so severe that [she could not] perform any work existing in significant numbers in the national economy."  [R. at 2430-31].  The ERISA Appeals Committee requested that the Plaintiff provide more information concerning the basis for her SSDI award, but the Plaintiff failed to provide the information requested.  The Administrative Law Judge wrote to the Plaintiff and stated that "if you would like more information about my decision, I can provide you with a record of my oral decision.  You must ask for this record in writing.  You may mail or bring your request to any Social Security office or hearing office."  Id.  This apparently was not done.

The Plaintiff now claims that it was Defendant's duty to write a letter to the SSA and request the basis for the Administrative Law Judge's decision.  The Plaintiff's argument is unconvincing.  Plaintiff does not state any authority to support that Defendant was required to request the record.  The letter notes that the record would be made available to the Plaintiff, not to the Defendant, and the

burden to prove disability under the policy squarely rests with the Plaintiff. The Defendant has demonstrated the absence of a genuine dispute regarding the Plaintiff's eligibility for long-term disability insurance benefits based on the terms of the policy and the administrative record. If the Plaintiff wants to rely on the SSDI award to support that the Defendant's decision was wrong, she must demonstrate that summary judgment is inappropriate by designating specific facts showing a genuine issue for trial. The Plaintiff has not offered any evidence to suggest that the Administrative Law Judge's decision to award SSDI benefits undermines the Defendant's decision to deny benefits under the policy. Plaintiff also cannot offer any evidence to discredit Defendant's decision to deny benefits because Plaintiff does not know the basis for the SSDI award.

Whatever the merits of the Administrative Law Judge's decision regarding the SSDI award may be, the Plaintiff has failed to designate any specific facts to show that there is a genuine issue of material fact as to whether she is disabled under the terms of the policy. The Plaintiff was awarded SSDI benefits on September 12, 2011. In January 2012, four months after the SSDI award was rendered, the Plaintiff's treating physician opined that she was fully capable of working in a sedentary occupation. During the same month, the Plaintiff was diagnosed by a board-certified orthopedic surgeon, who conducted an IME at the

19

direction of the Defendant, and concluded that there was no reason to believe that Plaintiff could not work in a sedentary capacity.  The Court concludes that the Defendant's decision to terminate benefits was not *de novo* wrong despite what the SSDI records might show.

In Ray v. Sun Life & Health Ins. Co., the Plaintiff argued that the opinions of his treating physician and his social security benefits award established that he was disabled and entitled to disability benefits.  443 Fed. App'x 529, 533 (11th Cir. 2011).  The Eleventh Circuit affirmed the district court's decision that the insurer's decision to terminate the Plaintiff's benefits was not *de novo* wrong. Id.  The Court observed that the treating physician's conclusions were internally inconsistent and contradicted by two non-examining medical experts, who reviewed the Plaintiff's medical records.  Id.  Based on the opinions of the two non-examining medical experts, the Court held that the insurer's decision to terminate benefits was not *de novo* wrong despite the government's approval of social security benefits.  Id.  Summary judgment is even more appropriate here where Plaintiff's treating physician and another medical expert, who conducted an in person examination of the Plaintiff, believed that she was capable of sedentary work *after* she was awarded SSDI benefits.

There is no dispute that Defendant had the discretion to determine whether

Plaintiff was entitled to disability benefits under the plain terms of the policy. DSMF at ¶ 7; [Pl.'s Initial Disclosures at 5.]  Because the Court finds that the Defendant's decision to terminate the Plaintiff's benefits was not wrong, the Court also concludes that the Defendant's actions in reviewing the claim were reasonable, and the decision it reached was reasonable based on the administrative record.  Under the deferential arbitrary and capricious standard, the Court finds that Defendant acted reasonably in denying long-term disability benefits to the Plaintiff.

Although not raised as an issue in this case, the Court considers if there was a conflict of interest that affected the Defendant's decision to deny long-term disability benefits.  The court notes that Plaintiff does not argue that the Defendant's decision was influenced by a conflict of interest.  Defendant, however, appears to acknowledge that it has a conflict of interest because it determines whether an employee is entitled to benefits under the insurance policy, and also pays long-term disability benefits.  See DSMF at ¶¶ 41-51.  Defendant also asserts that its employees, who make decisions regarding the eligibility of benefits, are paid fixed salaries and bonuses wholly unrelated to claims decisions, and that its employees are evaluated on the quality of their work rather than the amount of claims that are approved or denied.  Id. at ¶¶ 46-50.  The undisputed evidence,

therefore, is that Defendant took affirmative steps to reduce potential bias and to promote accuracy, and the Court concludes that Defendant's conflict of interest was not a significant factor in its decision to deny benefits in this matter.

Here, Plaintiff has not established any genuine dispute regarding any material fact, and Plaintiff cannot show that she was disabled and unable to perform in a sedentary occupation.  Accordingly, and for the reasons stated above, the Court grants the Defendant's Motion for Summary Judgment.

### 2.    *Preemption Of State Law Claims*

The Defendant argues that the Plaintiff's state law claims for breach of contract and bad faith refusal to pay an insurance claim under O.C.G.A. § 33-4-6 of the Georgia Code are preempted by ERISA.  The Court agrees.  "Defensive preemption defeats claims that seek relief under state-law causes of action that 'relate to' an ERISA plan."  Butero, 174 F.3d at 1214 (citing 28 U.S.C. § 1144(a); Lordman Enters. v. Equicor, Inc., 32 F.3d 1529, 1532 (11th Cir. 1994)).  It is settled law that ERISA preempts claims for breach of contract, fraud and bad faith that arise under state law.  Id. (citing Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 47-48 (1987); see also Salter v. Cont'l Cas. Co., No. 5:03CV221(DF), 2004 WL 5573421, at *4-5 (M.D. Ga. Oct. 29, 2004) (finding that bad faith claims arising under § 33-4-6 of the Georgia Insurance Code are preempted by ERISA).

The Court finds that Plaintiff's state law claims are preempted by ERISA and are thus required to be dismissed.

## III.    CONCLUSION

Accordingly, for the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for a Trial on the Papers is **DENIED AS MOOT**.

**SO ORDERED** this 2nd day of January 2013.


WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE

23